## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DYNAVOX INC., *et al.*, | Case No. 14-10791 (PJW) |
| Debtors. | Jointly Administered |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF DYNAVOX INC., DYNAVOX INTERMEDIATE LLC AND DYNAVOX SYSTEMS HOLDINGS LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

### DATED:  November 17, 2014

**GENOVESE JOBLOVE & BATTISTA, P.A.**

Paul J. Battista (Fla. Bar No. 884126)
Heather L. Harmon (Fla. Bar No. 013192)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:      (305) 349-2300
Facsimile:      (305) 349-2310
Email:          pbattista@gjb-law.com
                hharmon@gjb-law.com

*Co-Counsel to Debtors and Debtors-In-Possession*

**CHIPMAN BROWN CICERO & COLE, LLP**

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware  19801
Telephone:      (302) 295-0191
Facsimile:      (302) 295-0199
Email:          chipman@chipmanbrown.com
                olivere@chipmanbrown.com

*Co-Counsel to Debtors and Debtors-In-Possession*

# TABLE OF CONTENTS

I. DEFINITIONS AND RULES OF CONSTRUCTION ..................................................1

    A.    Definitions. ..................................................................................1

    B.    Rules of Construction. .................................................................11

II. DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS..............12

    A.    Summary and Classification of Claims and Equity Interests. ...................12

    B.    Allowance and Treatment of Unclassified Claims ...............................14

        1.    Administrative Claims. ....................................................14

        2.    Priority Tax Claims. .......................................................15

    C.    Classification and Treatment of Classified Claims and Interests. ..............15

        1.    Class 1 (Secured Tax Claims). ...........................................15

        2.    Class 2 (Other Secured Claims). .........................................16

        3.    Class 3 (Priority Claims other than Priority Tax Claims). ................16

        4.    Class 4 (General Unsecured Claims). .....................................16

        5.    Class 5 (Equity Interests). .................................................16

III. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .................17

    A.    Rejection of Executory Contracts and Unexpired Leases. ......................17

        1.    Rejected Agreements. ......................................................17

        2.    Bar Date for Rejection Damage Claims. ..................................17

IV. MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN.......................17

    A.    Ratification of Agreements. .........................................................17

        1.    The Bill of Sale. ...........................................................17

        2.    Confidentiality Agreements. ...............................................17

        3.    Directors and Officers Liability Policies. .................................18

    B.    Substantive Consolidation of All Debtors' Estates................................18

    C.    Funding of the Plan. ..................................................................19

D.   The Liquidating Estates. .................................................................19

1.   Continuation of the Estates. ..............................................19

2.   Preservation/Vesting of Rights of Action. .......................20

3.   Appointment of the Liquidating Trustee. .........................20

4.   Powers and Duties of the Liquidating Trustee. ................21

5.   Termination of the Liquidating Estates. ...........................22

6.   Additional Provisions Regarding the Liquidating Estates. ................22

E.   Avoidance Actions and Claims Objections. ................................22

F.   Distribution of Property Under the Plan. ....................................23

1.   Manner of Cash Payments Under the Plan. ......................23

2.   No De Minimis Distributions. ...........................................23

3.   No Distribution with Respect to Disputed Claims. ...........24

4.   Delivery of Distributions and Undeliverable/Unclaimed Distributions. ...........24

G.   Dissolution of Debtor Entities/Termination of Officers and Directors. .............25

V. EFFECT OF CONFIRMATION OF THE PLAN ..........................................25

A.   Binding Effect of Plan/Non-Discharge of the Debtors. ..............25

B.   Releases By The Debtors. ............................................................25

C.   Exculpation and Limitation of Liability. .....................................26

D.   Injunctive Relief Relating To Releases. ......................................27

E.   Terms of Existing Injunctions or Stays. ......................................27

VI. OTHER PLAN PROVISIONS .....................................................................27

A.   The Effective Date. ......................................................................27

B.   Stay of Confirmation Order Shortened. .......................................28

C.   Revocation of Plan/No Admissions. ............................................28

D.   Exemption from Certain Transfer Taxes. .....................................29

E.   Modifications of Plan. ..................................................................29

F.   Cram-Down. ..................................................................................29

G.     Post-Effective Date Effect of Evidences of Claims or Equity Interests. .........................29

H.     Post-Effective Date Notices. ...............................................................................29

I.     Successors and Assigns. ......................................................................................29

J.     Saturday, Sunday or Legal Holiday. ....................................................................29

K.     Headings. ...........................................................................................................30

L.     Severability of Plan Provisions. ..........................................................................30

M.     Governing Law. ..................................................................................................30

N.     Retention of Jurisdiction. ....................................................................................30

O.     Plan Embodies Settlement. .................................................................................31

P.     Term of Bankruptcy Injunctions or Stays. ...........................................................31

Q.     Objections to Confirmation. ................................................................................31

R.     Notices. .............................................................................................................32

VII. RECOMMENDATION AND CONCLUSION .................................................................32

Exhibits:

    A.  Liquidating Estates Agreement

DynaVox Inc. ("DynaVox Inc."), a Delaware corporation, DynaVox Intermediate LLC ("Intermediate"), a Delaware limited liability company and DynaVox Systems Holdings LLC ("Systems Holdings"), a Delaware limited liability company, the debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors") hereby propose the following First Amended Joint Plan of Liquidation for the Debtors (the "Plan") pursuant to section 1121(c) of title 11 of the United States Code.

## I.

## DEFINITIONS AND RULES OF CONSTRUCTION

### A.    Definitions.

In addition to such other terms as are defined elsewhere in the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan:

**"Administrative Claim"** means a Claim for costs and expenses of administration under section 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by a Debtors within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; and (f) any Allowed Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

**"Administrative Claims Bar Date"** means the applicable last date set by the Bankruptcy Court pursuant to an Administrative Claims Bar Date Order for a Claimant (other than Professionals) to file a request for payment of any Administrative Claim. For Administrative Claims (other than Professional Fee Claims) arising between the Petition Date and August 1, 2014, the Administrative Claim Bar Date was August 29, 2014 as set forth in the Administrative Claims Bar Date Order. For Administrative Claims arising between August 1, 2014 and the Effective Date, the Confirmation Order shall establish the Administrative Claims Bar Date.

**"Administrative Claims Bar Date Order"** means (a) with respect to Administrative Claims (other than Professional Fee Claims) arising on or prior to August 1, 2014, that certain Order Pursuant to Bankruptcy Rules 2002 and 3003, and Local Rules 2002-1(e) and 3003-1 (I) Setting Bar Dates for Filing Proofs of Claim and Interest, (II) Approving the Form and Manner for Filing such Claims, and (III) Approving Notice Thereof, dated July 22, 2014 [Docket No. 171], and (b) with respect to Administrative Claims (other than Professional Fee Claims) arising between August 1, 2014 and the Effective Date, the Confirmation Order.

**"Administrative/Priority Reserve Account"** means a subaccount to be established and administered by the Liquidating Estates containing funds deposited from the Debtors' Cash on hand on the Effective Date in an amount equal to the aggregate amount of asserted and unpaid Administrative Claims (other than Professional Fee Claims) and Priority Claims incurred on or before the Effective Date whether or not subject to dispute, but other than Administrative Claims and Priority Claims that are

1

disallowed on or before the Effective Date pursuant to a Final Order of the Bankruptcy Court. The Administrative/Priority Reserve Account may be an existing account of the Debtors.

**"Allowed"** means, with respect to any Claim or Equity Interest, except as otherwise provided herein: (a) a Claim or Equity Interest that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors have not Filed an objection on or before the 90th day after the Effective Date; (b) a Claim that is set forth in a timely Filed Proof of Claim as to which no objection has been Filed and which is not otherwise a Disputed Claim; (c) a Claim or Equity Interest that has been allowed by a Final Order; (d) a Claim or Equity Interest that is allowed: (i) in any stipulation in the amount and nature of Claim or Equity Interest executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court, (ii) in any stipulation in the amount and nature of Claim or Equity Interest executed by the Liquidating Trustee on or after the Effective Date, (iii) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; or (e) a Claim or Equity Interest that is Allowed pursuant to the terms of this Plan.

**"Allowed Claim"** means a Claim that has been Allowed.

**"Allowed Equity Interest"** means an Equity Interest that has been Allowed.

**"Assets"** mean any and all real property or personal property assets, rights or interests of Debtors, whether tangible or intangible, and any proceeds realized therefrom, including without limitation, all property of the Estates under Section 541 of the Bankruptcy Code, all Cash of the Debtors, all Retained Actions (including Avoidance Actions), and any Net Litigation Proceeds.

**"Avoidance Actions"** mean all claims and causes of action that the Debtors have or had the power to assert pursuant to Chapter 5 of the Bankruptcy Code, including any or all of sections 510, 544, 545, 547, 548, 549, 550 and 551 of the Bankruptcy Code, under any similar or related law, or under fraudulent transfer or preference laws.

**"Ballots"** mean the ballots upon which Holders of Impaired Claims or Impaired Equity Interests shall indicate their acceptance or rejection of the Plan in accordance with the Plan, provided however that the Debtors do not anticipate the need for Ballots as all Classes of Claims and Equity Interests are Unimpaired under the Plan and therefore deemed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code.

**"Ballot Deadline"** means the deadline, if applicable, established by the Bankruptcy Court for the delivery of executed Ballots to the Ballot Tabulator.

**"Ballot Tabulator"** means, if required, UpShot Services, LLC.

**"Bankruptcy Code"** or **"Code"** means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable in the Case.

**"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the District of Delaware, or any other court that properly exercises jurisdiction over the Case.

**"Bankruptcy Rules"** means, together, (a) the Federal Rules of Bankruptcy Procedure and (b) the Local Rules of the Bankruptcy Court, as applicable in these Cases.

**"Bar Date"** means August 29, 2014 with respect to all Claims and Equity Interests, other than Administrative Claims, provided that with respect to any such Claim of a Governmental Unit (other than an Administrative Claim), it means October 6, 2014, as set forth in the Bar Date Order.

**"Bar Date Order"** means that certain Order Pursuant to Bankruptcy Rules 2002 and 3003, and Local Rules 2002-1(e) and 3003-1 (I) Setting Bar Dates for Filing Proofs of Claim and Interest, (II) Approving the Form and Manner for Filing such Claims, and (III) Approving Notice Thereof, dated July 22, 2014 [Docket No. 171].

**"Bill of Sale"** means that certain Bill of Sale by and from DynaVox Intermediate, LLC to and in favor of Tobii, dated as of May 23 2014, as approved by the Sale Order.

**"Business Day"** means a day that is not a Saturday, Sunday, or legal holiday.

**"Cases"** or **"Chapter 11 Cases"** means the Debtors' cases under chapter 11 of the Bankruptcy Code.

**"Cash"** means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and legal tender of the United States of America or instrumentalities thereof.

**"Claim"** means a claim (as defined in section 101(5) of the Bankruptcy Code) against Debtors, including, but not limited to: (a) any right to payment from Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**"Claimant"** means the Holder of a Claim.

**"Claim Objection"** means any right to object to, obtain the disallowance of, or obtain the subordination of a Claim pursuant to the Bankruptcy Code or applicable law.

**"Claim/Equity Objection Deadline"** means, unless extended by Order of the Court for good cause, the later of: (a) 90 days after the Effective Date, and (b) 90 days after the date on which the subject proof of Claim or Equity Interest is or was Filed.

**"Class"** means a group of Claims or Equity Interests as classified in Section II.A.

**"Collateral"** means property, or an interest in property, of the Estates that is encumbered by a Lien to secure payment or performance of a Claim.

**"Confidentiality Agreements"** means all pre-petition and post-petition confidentiality and similar agreements addressing the treatment of confidential information of the Debtors into which the Debtors and other parties entered prior to the Effective Date, including in connection with the Sale.

**"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

**"Confirmation Hearing"** means the hearing by the Bankruptcy Court held pursuant to Bankruptcy Code section 1128(a) regarding confirmation of the Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan under Bankruptcy Code section 1129.

**"Consolidated Debtors"** means all of the Debtors.

**"Creditor"** means any Holder of a Claim against Debtors that arose on or prior to the Petition Date.

**"Debtors"** means DynaVox Inc., a Delaware corporation, DynaVox Intermediate LLC, a Delaware limited liability company and DynaVox Systems Holdings LLC, a Delaware limited liability company.

**"Debtors' Counsel"** means (i) Genovese Joblove & Battista, P.A., 100 SE 2nd Street, Suite 4400, Miami, Florida, 33131; and (ii) Chipman Brown Cicero & Cole, LLP, 1007 North Orange Street, Suite 1110, Wilmington, Delaware, 19801.

**"Debtors' Indemnified Parties"** shall mean any Person which the Debtors are obligated to indemnify and exculpate, including its present and former officers, directors and managers, as provided in any of: (i) the Debtors' respective certificates of incorporation or organization; (ii) the Debtors' by-laws; (iii) any written agreement with the Debtors; (iv) similar documents or agreements of or with the Debtors; or (v) applicable law.

**"DIP Facility"** means that certain *Secured Funding Agreement for Post-Petition Debtor-in-Possession Financing Facility* (as may be amended, supplemented, restated, or otherwise modified from time to time), by and among the Debtors and JEC and the Interim Financing Order and the Final Financing Order.

**"DIP Lender"** means JEC.

**"Directors and Officers Liability Policies"** means any and all existing insurance policies, including "tail" coverage, under which coverage is available in respect of damages resulting from the acts or omissions of the present and former officers, directors and/or managers of the Debtors.

**"Directors and Officers Reserve Account"** means a subaccount to be established and administered by the Liquidating Estates containing funds deposited from the Debtors' Cash on hand on the Effective Date in an amount of $100,000 to be held for the benefit of the Debtors' Indemnified Parties. The Cash in the Directors and Officers Reserve Account shall be available to pay the defense costs incurred by the Debtors' Indemnified Parties in the event that the Liquidating Trustee brings a Retained Action against any such Debtors' Indemnified Party, with such amount to be allocated pro rata among those Debtor Indemnified Parties subject of the Retained Action brought by the Liquidating Trustee. If no Retained Actions are initiated prior to the Retained Actions Deadline, then the Cash in the Directors and Officers Reserve Account shall be included in the Distributable Cash available for distribution to holders of Allowed Claims and Allowed Equity Interests in accordance with the Plan. The Directors and Officers Reserve Account may be an existing account of the Debtors.

"**Directors and Officers Investigation Reserve**" means a subaccount to be established and administered by the Liquidating Estates containing funds deposited from the Debtors' Cash on hand on the Effective Date in an amount of $150,000 to be used by the Liquidating Trustee to investigate and prosecute, if applicable, any and all Retained Actions against any Debtor Indemnified Party.  If no Retained Action is initiated by the Liquidating Trustee against a Debtor Indemnified Party prior to the Retained Actions Deadline, then the Cash remaining in the Directors and Officers Investigation Reserve (after payment of any Post Confirmation Administrative Claims in connection with such investigation) shall be included in the Distributable Cash available for distribution to holders of Allowed Claims and Allowed Equity Interests in accordance with the Plan.

"**Disallowed Claim**" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, Final Order, or other applicable law.

"**Disallowed Equity Interest**" means an Equity Interest, or any portion thereof, that has been disallowed by a Final Order or by other agreement of an Equity Interest holder.

"**Disbursing Agent**" means the Liquidating Trustee or any entity employed or retained by the Liquidating Trustee to serve as disbursing agent under the Plan.

"**Disclosure Statement**" means that certain *First Amended Disclosure Statement Describing the First Amended Joint Plan of Liquidation of Dynavox Inc., Dynavox Intermediate LLC and Dynavox Systems Holdings LLC Under Chapter 11 of the Bankruptcy Code (Dated: November 17, 2014)*, as it may be subsequently amended or modified, Filed in connection with the Plan.

"**Disputed**" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed or contingent for which no timely proof of claim in a liquidated noncontingent amount has been filed; or (b) as to which Debtors or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtors in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

"**Disputed Claim**" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the Claim/Equity Objection Deadline or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent or unliquidated for which no timely proof of claim in a liquidated noncontingent amount has been filed; (iii) a Proof of Claim Filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (iv) a Claim that is not listed in the Schedules and for which no timely proof of claim has been filed.

"**Disputed Equity Interest**" means any Equity Interest or portion of an Equity Interest as to which an objection to the allowance thereof has been interposed as of the Claim/Equity Objection Deadline or any later deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order.

"**Distribution Date(s)**" means: (i) the date which is as soon as reasonably possible after the Effective Date of the Plan on which the Debtors or the Liquidating Trustee, as applicable, shall make initial distributions to Holders of Allowed Claims and, if applicable, Allowed Equity Interests in accordance with and as required under the Plan, (ii) with respect to each distribution thereafter, on the date or dates when there is sufficient Distributable Cash, in the Liquidating Trustee's discretion, to make a meaningful distribution to Holders of Allowed Claims and Allowed Equity Interests under this Plan, provided that with respect to Disputed Claims and Disputed Equity Interests, the distributions thereon shall be held in reserve, provided however, that no distributions shall be made unless Distributable Cash exists in excess of any reserves determined to be appropriate by the Liquidating Trustee, including for Post Confirmation Administrative Claims, and those amounts reserved for distributions on Disputed Claims and Disputed Equity Interests.

"**Distributable Cash**" means any Cash of the Debtors or the Liquidating Estates available for distribution by the Liquidating Estates to the Holders of Allowed Claims and Allowed Equity Interests under the Plan, including any Net Litigation Proceeds, in all cases after deduction for (i) the costs of administering the Liquidating Estates, and satisfying any other unpaid obligations due under the Plan (including, without limitation, any amounts owing to the Holders of Allowed Post Confirmation Administrative Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Tax Claims, Allowed Other Secured Claims, Allowed Priority Claims (other than Allowed Priority Tax Claims), Allowed Professional Fee Claims and Allowed General Unsecured Claims), and (ii) Cash held in reserve in the exercise of the Liquidating Trustee's business judgment for the payment of Disputed Claims and Disputed Equity Interests, and to enable the Liquidating Trustee to perform his duties hereunder, including for the payment of prospective Post Confirmation Administrative Claims.

"**Effective Date**" means the first Business Day following the Confirmation Date, on which the conditions set forth in Section VI.A are satisfied.

"**Entity**" means an entity as defined in section 101(15) of the Bankruptcy Code.

"**Equity Interest**" means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized or outstanding shares of stock and any limited liability company membership interests, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

"**Equity Interest Objection**" means any right to object to, obtain the disallowance of, or obtain the subordination of an Equity Interest pursuant to the Bankruptcy Code or applicable law.

"**Estates**" means the estates of the Debtors in these Chapter 11 Cases created pursuant to section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

"**Estate Cash**" means the cash in the Estates on and after the Effective Date.

**"File", "Filed", or "Filing"** means duly and properly filed with the Bankruptcy Court and reflected on the Bankruptcy Court's official docket.

**"Final Decree"** means the decree contemplated under Bankruptcy Rule 3022.

**"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) which has not been reversed, stayed, modified or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no timely appeal or petition for reconsideration, review, rehearing, or certiorari is pending, provided however that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

**"Final Financing Order"** means that certain *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Status, and (3) Modifying Automatic Stay,* dated May 5, 2014 [Docket No. 86].

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim or a Secured Claim.

**"Governmental Unit"** has the meaning specified in Bankruptcy Code section 101(27).

**"Holder"** means an Entity holding a Claim or Equity Interest.

**"Impaired"** means with respect to a Claim or Equity Interest, or a Class of Claims or Equity Interests, a Claim or Equity Interest, or Class of Claims or Equity Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Insider"** means an insider of any Debtor, as defined in section 101(31) of the Bankruptcy Code.

**"Intercompany Claim"** means a Claim held by a Debtor against another Debtor.

**"Interim Financing Order"** means that certain *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Granting Liens and Providing Superpriority Administrative Expense Status, (3) Modifying Automatic Stay; and (4) Scheduling a Final Hearing,* dated April 14, 2014 [Docket No. 40].

**"JEC"** means JEC-BR Partners, LLC.

**"Lien"** means a lien, as defined in Bankruptcy Code section 101(37), except a lien that has been avoided in accordance with Bankruptcy Code sections 544, 545, 546, 547, 548, or 549 or is otherwise invalid under the Bankruptcy Code or applicable state law.

**"Liquidating Estates"** means the Consolidated Debtors' Estates on and after the Effective Date.

**"Liquidating Estate Agreement"** means that certain *Liquidating Estate Agreement* among the Debtors and the Liquidating Trustee setting forth the terms and conditions of the Liquidating Trustee's retention by the Liquidating Estates, in substantially the form attached hereto as Exhibit A.

**"Liquidating Trustee"** means Soneet R. Kapila, appointed pursuant to the Confirmation Order to administer the Liquidating Estates, or such other person determined as a replacement Liquidating Trustee in accordance with the Plan or the Liquidating Estate Agreement.

**"Net Litigation Proceeds"** means the cash proceeds realized by the Liquidating Trustee on any and all Retained Actions, after deduction for the costs of realizing such proceeds and administering the Liquidating Estates.

**"Person"** or **"person"** shall mean any individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, estate, trust, unincorporated association or organization, governmental agency or political subdivision thereof, or other entity.

**"Petition Date"** means with regard to: (i) Intermediate, April 6, 2014, the date on which it filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and (ii) DynaVox Inc. and Systems Holdings, April 7, 2014, the date on which each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

**"Plan"** means this First Amended Joint Plan of Liquidation, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Plan, the Bankruptcy Code and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms and provisions hereof.

**"Post-Confirmation Administrative Claim"** shall mean a Claim for services rendered or expenses incurred after the Effective Date in connection with these Chapter 11 Cases by the Liquidating Estates, the Liquidating Trustee and/or the Post Confirmation Professionals.

**"Post Confirmation Professionals"** shall mean those professionals engaged by the Liquidating Estates from and after the Effective Date.

**"Post-petition Interest"** means interest calculated at an annual rate equal to the federal judgment rate as of the Petition Date to be accrued on any Allowed General Unsecured Claims for the period from the Petition Date through the date of payment in full of such Allowed General Unsecured Claim under the terms of this Plan.

**"Prepetition Credit Agreement"** means that certain *Third Amended and Restated Credit Agreement*, dated as of June 23, 2008, by and among DynaVox Intermediate LLC (one of the Debtors herein), its wholly owned non-debtor subsidiary, DynaVox Systems, LLC, and certain other direct and indirect subsidiaries of DynaVox Systems, LLC, as borrowers, and JEC, successor by assignment to GE Business Financial Services Inc., as lender.

**"Priority Claim"** means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Pro Rata**" means proportionately so that, with respect to a Claim or Equity Interest, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim or Equity Interest to (ii) the Allowed amount of the Claim or Equity Interest, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims or Allowed Equity Interest in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims or Allowed Equity Interests in such Class or Classes.

"**Professional**" means an Entity: (a) employed pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Professional Fees Reserve Account**" means an account to be established and administered by the Liquidating Estates for the payment of Professional Fee Claims, which account shall be free and clear of any liens, claims, interests and/or encumbrances other than the Professional Fee Claims. The Professional Fees Reserve Account may be an existing account of the Debtors.

"**Professional Fee Claim**" means those fees and expenses claimed by Professionals pursuant to sections 330, 331 and/or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

"**Proof of Claim**" or "**Proof of Interest**" means a proof of Claim or proof of Interest Filed pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

"**Rejection Damage Claim**" means a claim arising under Bankruptcy Code section 365 from the rejection by the Debtors of an unexpired lease or executory contract.

"**Retained Actions**" means any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtors or the Estates, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estates of the Debtors under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for Avoidable Actions; (v) related to federal or state securities laws; (vi) direct or derivative claims or causes of action of any type or kind; (vii) against any and all current and/or former officers, directors and/or managers of the Debtors, including for breach of fiduciary duty, aiding and abetting breach of fiduciary duty or improper dividends; (viii) under and pursuant to any policies of insurance maintained by the Debtors, including without limitation, the directors' and officers' liability insurance policy; (ix) for theft of corporate opportunity; (x) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xi) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xii) which arise under or as a result of any section of the Bankruptcy Code, including Section

362; (xiii) for lender liability against any lender of the Debtors, including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtors, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; (xiv) for substantive consolidation, piercing the corporate veil, alter ego, domination, constructive trust and similar principles of state or federal creditors' rights laws, and (xv) to the extent not otherwise set forth above, as described in the Disclosure Statement.

**"Retained Actions Deadline"** means (i) solely for Debtors' Indemnified Parties, the date which is 180 days after the Effective Date, and (ii) for all other Retained Actions, the applicable bankruptcy or non-bankruptcy statute of limitations, in each case unless extended by Order of the Court for good cause shown.

**"Sale"** means the transaction that was approved pursuant to the Sale Order, under which Tobii acquired Membership Interests of DynaVox Systems LLC on or about May 23, 2014.

**"Sale Closing"** means the closing of Sale.

**"Sale Order"** means that certain *Order (I) Authorizing the Sale by the Debtors of the Membership Interests of DynaVox Systems LLC Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief, dated May 22, 2014 [Docket No. 112]*.

**"Schedules"** means the Schedules of Assets and Liabilities Filed by the Debtors on or about April 21, 2014, as they may be amended subsequently.

**"Secured Claim"** or **"Other Secured Claim"** means any Claim that is secured in whole or part, as of the Petition Date, by a Lien that is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

**"Secured Tax Claim"** means the Secured Claim of a Governmental Unit for unpaid taxes arising before the Petition Date.

**"Tax"** means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

**"Tax Claim"** means all or that portion of an Allowed Claim held by a Governmental Unit for a tax assessed or assessable against the Debtors, including income and employment taxes and any related penalties or interest.

**"Unimpaired"** means with respect to a Claim or Equity Interest or Class of Claims or Equity Interests, a Claim or Equity Interest or Class of Claims or Equity Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**"Unliquidated Claim"** means any Claim for which a Proof of Claim has been Filed with the Bankruptcy Court but was not Filed in a sum certain, and which Claim has not been estimated, fixed or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date.

**"Tobii"** means Tobii Assistive Technology, Inc.

**"U.S. Trustee"** means the Office of the United States Trustee for the District of Delaware.

**"U.S. Trustee Fees"** means fees or charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

**"Voting Record Date"** means the date as of which the identity of the Holders of Equity Interests is set for purposes of determining which Holders of Equity Interests entitled to receive distributions under the Plan subject in all events to an Equity Interest Objection. Pursuant to Bankruptcy Rules 3017(d) and 3018(a), the Voting Record Date shall be the date the Bankruptcy Court's order approving the Disclosure Statement is entered on the Bankruptcy Court's docket, or such other date as the Bankruptcy Court may set.

### B.    Rules of Construction.

1.    The rules of construction in Bankruptcy Code section 102 apply to this Plan.

2.    Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

3.    A term that is used in this Plan and that is not defined in this Plan has the meaning, if any, attributed to that term in the Bankruptcy Code or the Bankruptcy Rules.

4.    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

5.    Whenever it is appropriate from the context, each term in this Plan, whether stated in the singular or the plural, includes both the singular and the plural.

6.    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms. No material change to the form or terms may be made after the Confirmation Date without the consent of any party materially and negatively affected by the change.

7.    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

8.     Any reference to a person or entity includes the successors and assigns of such person or entity.

9.     Unless otherwise indicated, the phrase "under the Plan" or "under this Plan" and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

10.     Unless otherwise specified, all references to Sections or Exhibits are references to this Plan's Sections or Exhibits.

11.     The words "herein," "hereto," "hereunder," and other words of similar import refer to this Plan in its entirety rather than to only a particular portion.

## II.

## DESIGNATION OF CLASSES AND TREATMENT OF CLAIMS AND INTERESTS

### A.     Summary and Classification of Claims and Equity Interests.

This Section classifies Claims and Equity Interests for all purposes, including voting, confirmation, and distributions under the Plan, except for Administrative Claims and Priority Tax Claims, which are not classified. The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. As the Plan provides for substantive consolidation of the Consolidated Debtors' Estates, there is only a single Class for each category of Claims or Equity Interests against the Consolidated Debtors into which all such Claims or Equity Interests against any one or more of the Consolidated Debtors are classified.

The following table lists the impairment and voting status of unclassified Claims and the Classes of Claims and Equity Interests under the Plan:

| CLASS/ UNCLASSIFIED CLAIMS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Unclassified Claims | Administrative Claims and Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 1 | Secured Tax Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 2 | Other Secured Claims | Unimpaired | Deemed to Accept - Vote Not Solicited |
| Class 3 | Priority Claims (Other than Priority Tax Claims) | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 4 | General Unsecured Claims | Unimpaired | Deemed to Accept – Vote Not Solicited |
| Class 5 | Equity Interests | Unimpaired | Deemed to Accept – Vote Not Solicited |

**A schedule of the estimated amount of each Class of Claims and Equity Interests and estimated percentage recovery is included in the Schedule of Assets & Claims on the Effective Date attached to the Disclosure Statement as Exhibit 6. This Schedule does not estimate any Post-Confirmation Administrative Claims.**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM OR EQUITY INTEREST THAT IS NOT ALLOWED.**

The treatment in this Plan is in full and complete satisfaction of the legal, contractual, and equitable rights (including any Liens) that each entity holding an Allowed Claim or an Allowed Equity Interest may have in or against the Debtors, the Estates, the Liquidating Estates or their respective property. This treatment supersedes and replaces any agreements or rights those entities may have in or against the Debtors, the Estates, the Liquidating Estates or their respective property. All distributions in respect of Allowed Claims will be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Allowed Claim, if any.

B.        **Allowance and Treatment of Unclassified Claims.**

1.        **Administrative Claims.**

(a) **U.S. Trustee Fees and Reports.**

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors or the Liquidating Trustee. On and after the Effective Date, the Liquidating Trustee shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Notwithstanding the substantive consolidation of the Debtors called for in the Plan, each and every one of the Debtors or the Liquidating Trustee shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

(b) **Professional Fee Claims.**

A Professional Fee Claim will be allowed only if:

(i)      On or before 60 days after the Effective Date, the entity holding such Professional Fee Claim both Files with the Bankruptcy Court a final fee application or a motion requesting allowance of the fees and serves the application or motion on the Liquidating Trustee and his/her counsel, the Debtors and their counsel (to the extent, if any, that the final fee application is served prior to the Effective Date), the U.S. Trustee, and on all parties listed on the post-Effective Date special service list maintained by the Liquidating Trustee established in accordance with Section VI.H of the Plan; and

(ii)     The Bankruptcy Court allows the Professional Fee Claim.

Any party in interest may File an objection to such application or motion within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. Entities holding Professional Fee Claims that do not timely File and serve a fee application or motion for payment will be forever barred from asserting such Professional Fee Claim against the Debtors, the Estates, the Liquidating Estates, or their respective property.

With respect to all Professional Fee Claims that are accrued and not paid as of the Effective Date, the Liquidating Estates shall deposit into the Professional Fee Reserve Account an amount equal to the aggregate amount of asserted, unpaid Professional Fee Claims, which funds shall be released to the Professionals only in accordance with (i) existing or future orders of the Bankruptcy Court approving monthly interim compensation or the Professional's interim or final fee application, or (iii) any other applicable order of the Bankruptcy Court.

(c) **Other Administrative Claims.**

Unless otherwise expressly provided in the Plan, an Administrative Claim (other than U.S. Trustee Fees and a Professional Fee Claim) will be allowed <u>only</u> if:

(i)      On or before the Administrative Claim Bar Date, the person or entity asserting an Administrative Claim Files and serves a request for allowance of an Administrative Claim in

compliance with the procedures established by the Court under the Administrative Claim Bar Date Order; and

(ii)     The Court allows the Administrative Claim by Final Order.

Any party in interest may File an objection to such Administrative Claim within the time provided by the Bankruptcy Rules or within any other period that the Bankruptcy Court establishes. **Except as otherwise expressly provided in the Plan, Entities holding Administrative Claims (other than U.S. Trustee Fees or Professional Fee Claims, which are addressed in Sections II.B.1(a) and II.B.1(b) above) that have not timely Filed and served a request for allowance an Administrative Claim by the Administrative Claim Bar Date are forever barred from asserting such Administrative Claim against the Debtors, the Estates, the Liquidating Estates, or their respective property in these Chapter 11 Cases.**

Unless the entity holding a Allowed Administrative Claim (other than U.S. Trustee Fees or Professional Fee Claims) agrees to different treatment, the Disbursing Agent will pay to the entity holding such Allowed Administrative Claim Cash in the full amount of such Allowed Administrative Claim, on or before the latest of: (a) a Distribution Date; (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Allowed Administrative Claim becomes a Final Order; and (c) the date on which the Allowed Administrative Claim first becomes due and payable in accordance with its terms.

### (d) Costs of the Liquidating Estate.

Allowance and payment of Post Confirmation Administrative Claims of the Liquidating Trustee, compensation to the Liquidating Trustee and the Post Confirmation Professionals shall be governed by the provisions of the Plan and the Liquidating Estate Agreement.

### 2.     Priority Tax Claims.

Unless the entity holding an Allowed Priority Tax Claim agrees to different treatment, the Disbursing Agent will pay to the Holder of such Allowed Priority Tax Claim the full amount thereof from Distributable Cash on or before the latest of:  (a) a Distribution Date; (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Priority Tax Claim becomes a Final Order; and (c) the date on which the Allowed Priority Tax Claim first becomes due and payable in accordance with its terms.

### C.     Classification and Treatment of Classified Claims and Interests.

### 1.     Class 1 (Secured Tax Claims).

Class 1 comprises all Secured Tax Claims against the Consolidated Debtors.  Class 1 is unimpaired under the Plan.  In full satisfaction of any Allowed Class 1 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the Holder of such Allowed Class 1 Secured Tax Claim the full amount thereof from Distributable Cash on or before the latest of: (a) a Distribution Date, and (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

2.        **Class 2 (Other Secured Claims).**

Class 2 comprises all Other Secured Claims against the Consolidated Debtors that are not classified within any other Class under the Plan.  Class 2 is unimpaired under the Plan.  In full satisfaction of any Allowed Class 2 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will, at its option. (1) pay the holder of such Allowed Class 2 Claim the full amount thereof from Distributable Cash on or before the latest of: (a) a Distribution Date, and (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Claim becomes a Final Order, or (B) surrender the Collateral securing the Allowed Class 2 Secured Claim to the Holder thereof, in full satisfaction thereof.  For avoidance of doubt, any and all Claims of JEC, including Secured Claims and Claims under the DIP Facility, have been paid in full in accordance with (i) that certain Order Authorizing Debtors to Pay Undisputed Outstanding Prepetition and DIP Obligations to JEC, dated July 18, 2014 [Docket No. 168], and (ii) that certain Order Authorizing Debtors to Pay Settled Related Persons Charge to JEC, dated August 25, 2014 [Docket No. 196].

3.        **Class 3 (Priority Claims other than Priority Tax Claims).**

Class 3 comprises all Priority Claims, other than Priority Tax Claims, against the Consolidated Debtors.  Class 3 is unimpaired under the Plan.  In full satisfaction of any Allowed Class 3 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the holder of such Allowed Class 3 Claim the full amount thereof from Distributable Cash on or before the latest of: (a) a Distribution Date, and (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Claim becomes a Final Order.

4.        **Class 4 (General Unsecured Claims).**

Class 4 comprises all General Unsecured Claims against the Consolidated Debtors.  Class 4 is unimpaired under the Plan.  In full satisfaction of each Allowed Class 4 Claim that has not been satisfied or extinguished as of the Effective Date, the Disbursing Agent will pay the Holder of such Allowed Class 4 Claim the full amount thereof, including Post-Petition Interest thereon from and after the Petition Date to the date of such payment, from Distributable Cash on or before the latest of: (a) a Distribution Date, and (b) fifteen (15) days after the date of an order of the Bankruptcy Court allowing such Claim becomes a Final Order.   No distribution shall be made to Holders of Allowed Class 4 General Unsecured Claims unless and until all Allowed Administrative Claims, Allowed Professional Fee Claims, U.S. Trustee Fees, Post-Confirmation Administrative Claims, Allowed Priority Tax Claims and all Allowed Claims in Classes 1, 2 and 3 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the distribution at issue.

5.        **Class 5 (Equity Interests).**

Class 5 comprises all Equity Interests.  Class 5 is Unimpaired under the Plan.  In full satisfaction of any Allowed Class 5 Equity Interest that has not been satisfied or extinguished as of the Effective Date, the Class 5 Equity Interests shall not be cancelled or extinguished and the Disbursing Agent will pay to the Holder of such Allowed Class 5 Equity Interest its pro rata share of each distribution of Distributable Cash proposed to be made to all Holders of Allowed Class 5 Equity Interests by the Liquidating Trustee on any Distribution Date.  No distribution shall be made to Holders of Allowed Class 5 Equity Interests unless and until all Allowed Administrative Claims, Allowed Professional Fee Claims, U.S. Trustee Fees, Post-Confirmation Administrative Claims, Allowed Priority Tax Claims and

all Allowed Claims in Classes 1, 2, 3 and 4 have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the distribution at issue.

## III.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Rejection of Executory Contracts and Unexpired Leases.**

**1.    Rejected Agreements.**

On the Effective Date, all executory contracts and unexpired leases of the Debtors, except for the Confidentiality Agreements described in Section IV.A.2 and the Directors and Officers Liability Policies, will be rejected. The Confirmation Order will constitute a Bankruptcy Court order approving this rejection.

**2.    Bar Date for Rejection Damage Claims.**

Any Rejection Damage Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served on the Liquidating Trustee within thirty (30) days after the mailing of notice of the occurrence of the Effective Date (nothing herein shall extend the deadline for the filing of claims with respect to contracts or leases previously rejected). Any such Claims that are not timely Filed and served will be entitled to no distribution under the Plan on account of such Claim and will be unenforceable against the Debtors, the Estates, the Liquidating Estates, and their respective property, and entities holding such Claims will be barred by the Confirmation Order from receiving any distributions under the Plan on account of such untimely Claims.

## IV.

### MEANS OF EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.    Ratification of Agreements.**

**1.    The Bill of Sale.**

Notwithstanding any other provision of the Plan, the Bill of Sale shall remain in full force and effect, and shall be fully enforceable on and after the Effective Date.

**2.    Confidentiality Agreements.**

Notwithstanding any other provision of the Plan, all Confidentiality Agreements shall remain in full force and effect, and shall be fully enforceable by the Liquidating Trustee, including all Confidentiality Agreements entered into in connection with the Sale. The Debtors' rights under all such Confidentiality Agreements shall inure to the benefit of the Liquidating Estates and shall be enforceable by the Liquidating Trustee on and after the Effective Date.

### 3.    Directors and Officers Liability Policies.

As of the Effective Date, the Debtors shall assume (and assign to the Liquidating Estates if necessary to continue the Directors and Officers Liability Insurance Policies in full force) all of the Directors and Officers Liability Policies pursuant to section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Directors and Officers Liability Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the Directors and Officers Liability Policies, and each such indemnity obligation shall be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed.

## B.    Substantive Consolidation of All Debtors' Estates.

This Plan will effectuate a substantive consolidation of the Chapter 11 Cases of the Consolidated Debtors into a single entity solely for the purpose of the Chapter 11 Cases and all actions with respect to voting, confirmation, consummation and implementation of the Plan. On the Effective Date, the Plan essentially consolidates all the assets and liabilities of the Consolidated Debtors into a single estate. Accordingly, the Plan treats the Consolidated Debtors as a single entity and distributions are made on a collective basis to the Holders of Allowed Claims and Allowed Equity Interests against the Consolidated Debtors. Voting will be aggregated by type of Claim or Equity Interest without regard to which Debtor the Claim or Equity Interest is asserted against.

There is no express statutory authority for substantive consolidation; rather, substantive consolidation exists as an equitable remedy. *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). The Bankruptcy Court's ability to order substantive consolidation derives from its general equitable powers under section 105(a) of the Bankruptcy Code, which provides that the Bankruptcy Court may issue orders necessary to carry out the provisions of the Bankruptcy Code. *In re DRW Property Co. 82*, 54 B.R. 489, 494 (Bankr. N.D. Tex. 1985). Some courts have also found authority for substantive consolidation in section 1123(a)(5)(C) of the Bankruptcy Code. Section 1123(a)(5)(C) provides in part, "a plan [of reorganization] shall provide adequate means for the plan's implementation, such as merger or consolidation of the debtor with one or more persons." *See, e.g., In re Stone & Webster, Inc.*, 286 B.R. 532, 541 (Bankr. D. Del. 2002) ("Courts have held that [Section 1123(a)(5)(C)] indicates Congress' intent that a chapter 11 debtor may merge or consolidate with other entities, including other debtors, as part of the reorganization process... substantive consolidation is expressly authorized by... § 1123(a)(5)(C)"). There are however, no statutorily prescribed standards for court approval of substantive consolidation. Instead, courts apply certain judicially-developed standards to determine the appropriateness of substantive consolidation. *See e.g., In re New Century TRS Holding, Inc.*, 390 B.R. 140, 160 (Bankr. D. Del. 2008) (discussing and applying the Third Circuit's *Owens Corning* test).

The Debtors believe that the substantive consolidation requested in the Plan is legally justified under section 1123(a)(5) of the Bankruptcy Code and prevailing case law. Moreover, it is in the best interest of the Debtors' estates and will promote a more expeditious and streamlined distribution and recovery process for all Holders of Allowed Claims and Allowed Equity Interests.

On the Effective Date, (i) all Intercompany Claims by, between and among the Consolidated Debtors shall be eliminated, (ii) all assets and liabilities of the Consolidated Debtors shall be merged or treated as if they were merged with the assets and liabilities of the Consolidated Debtors, (iii) any

obligation of a Consolidated Debtor and all guarantees thereof by one or more of the other Consolidated Debtors shall be deemed to be one obligation of the Consolidated Debtors, and (iv) each Claim filed or to be filed against any Consolidated Debtor shall be deemed filed as a single Claim against and a single obligation of the Consolidated Debtors.  The Equity Interests are the Equity Interests in DynaVox Inc. and shall be treated as if they are Equity Interests in the Consolidated Debtors.  On the Effective Date, in accordance with the terms of the Plan, and the consolidation of the assets and liabilities of the Consolidated Debtors, all Claims based upon guarantees of collection, payment, or performance made by the Consolidated Debtors as to the obligations of another Consolidated Debtor shall be released and of no further force and effect.  The foregoing (a) shall not affect the rights of any Holder of a Secured Claim with respect to the Collateral securing its Claim, or the terms and implementation of any settlement, and the rights and obligations of the parties thereto, entered into in connection with the confirmation of the Plan and (b) shall not, and shall not be deemed to, prejudice the Retained Actions or the Avoidance Actions (subject to the releases set forth in Article V of the Plan), which shall survive entry of the Confirmation Order for the benefit of the Debtors and their Estates, as if there had been no substantive consolidation.

The Plan and Disclosure Statement, jointly, shall serve as, and shall be deemed to be, a motion for entry of an order granting substantive consolidation of the Consolidated Debtors' Chapter 11 Cases. If no objection to the Plan is timely filed and served by any Holder of Claim or Equity Interest affected by the Plan, as provided herein on or before the Ballot Deadline, or such other date as may be established by the Bankruptcy Court, the Confirmation Order will serve as the Order approving substantive consolidation pursuant to the terms of the Plan.  If any such objections are timely filed and served, a hearing with respect to the Plan and the objections thereto shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

C.      **Funding of the Plan.**

As set forth in Section II of the Plan, all obligations under the Plan will be paid by the Disbursing Agent from Distributable Cash, including the proceeds, if any, realized by the Liquidating Estates in respect of Retained Actions.

D.      **The Liquidating Estates.**

1.      **Continuation of the Estates.**

On and after the Effective Date, the Estates shall continue as the Liquidating Estates.  In addition, on the Effective Date of the Plan, (i) the Assets shall vest in, and be transferred to, the Liquidating Estates, which Liquidating Estates shall constitute, be appointed as and be deemed a representative of the Estates pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code solely for the benefit of all Holders of Allowed Claims and Allowed Equity Interests under the Plan with respect to, among other things, any Retained Actions, and (ii) the Liquidating Estates, through the Liquidating Trustee, is and shall be authorized and appointed to investigate, prosecute, enforce, pursue and settle, and continue to investigate, prosecute, enforce, pursue and settle, the liquidation of such Assets, including Retained Actions as a representative of the Estates pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code solely for the benefit of all Holders of Allowed Claims and Allowed Equity Interests under the Plan.  The Liquidating Estates shall hold title to all of the Assets of the Estates, as well as any property acquired after the Effective Date that otherwise would become property of the Estates under Bankruptcy Code

19

section 541, free and clear of all claims, liens, encumbrances and other interests, except as otherwise provided in the Plan. The Liquidating Estates shall be fully liquidated and Cash shall be distributed to holders of Allowed Claims and Allowed Equity Interests as soon as is reasonably practicable following the Effective Date in accordance with the Plan.

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE ASSETS TO THE LIQUIDATING ESTATES SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER, EXCEPT AS EXPRESSLY PRESERVED AND PROVIDED FOR IN THE PLAN AND THE CONFIRMATION ORDER.

**Notwithstanding anything in the Plan to the contrary, confirmation of the Plan shall divest the Debtors of any and all right, title and/or interest in the Assets, such that the Debtors shall not have any rights or authority in respect of any Assets vested in the Liquidating Estates.**

2.    **Preservation/Vesting of Rights of Action.**

Except as expressly released pursuant to the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Liquidating Trustee, on behalf of the Liquidating Estates shall be vested with and shall retain and may enforce any and all Retained Actions that the Debtors or the Estates may hold or have against any entity, including (i) Avoidance Actions, (ii) any legal or equitable rights to subordinate and/or disallow Claims, (iii) any causes of action that could be brought on behalf of the Debtors, the Estates, the Liquidating Estates; and (iv) any and all other claims, rights or causes of action of any kind or nature of the Debtors, the Estates or the Liquidating Estates that may exist under applicable bankruptcy law or non-bankruptcy law. Upon the Effective Date, the Liquidating Trustee (and only the Liquidating Trustee) shall have standing to assert, abandon, prosecute and/or settle, if applicable, any and all Retained Actions vested in the Liquidating Estates.

3.    **Appointment of the Liquidating Trustee.**

Pursuant to 11 U.S.C. § 1129(a)(5), consistent with the interests of creditors and equity security holders, and consistent with public policy, the Confirmation Order shall appoint, effective on the Effective Date, Soneet R. Kapila to act as the Liquidating Trustee, or such other person as may be appointed pursuant to the terms of the Liquidating Estate Agreement. The Liquidating Trustee shall be free to act as he deems appropriate, in his discretion, to effectuate the terms of the Plan and the Liquidating Estate Agreement.

The Liquidating Trustee and any Post Confirmation Professional shall be entitled to receive, on a monthly basis, payment of fees and reimbursement of reasonable expenses from the assets of the Liquidating Estates in accordance with the Liquidating Estate Agreement. In the event there is insufficient Cash to satisfy the fees and expenses incurred by the Liquidating Trustee and his professionals following the Effective Date, such fees and expenses shall be satisfied with the cash proceeds of the Retained Actions, when and to the extent they are realized.

The Liquidating Trustee shall serve for the duration of the Liquidating Estates, subject to earlier death, resignation, incapacity or removal as provided in the Liquidating Estate Agreement. If Soneet R. Kapila is not able to serve for the duration of the Liquidating Estates, a successor shall be chosen pursuant to the terms of the Liquidating Estate Agreement. The Liquidating Trustee shall be authorized, without further order of the Bankruptcy Court, to employ such persons, including professionals, as

deemed necessary to enable the Liquidating Trustee to perform his functions under the Plan, and the costs of such employment and other expenditures shall be paid solely from assets of the Liquidating Estates in accordance with the Liquidating Estate Agreement.

The Liquidating Trustee shall perform his obligations under the Plan without bond. The Liquidating Trustee shall have no liability to any person or entity entitled to receive a distribution pursuant to the Plan for any losses, damages, claims or causes of action, other than those resulting from the Liquidating Trustee's action or failure to act arising out of, in connection with or resulting from the Liquidating Trustee's fraud, gross negligence or willful misconduct  The Liquidating Estates shall indemnify, defend and hold the Liquidating Trustee and his agents and advisors, including Post Confirmation Professionals, harmless from and against any claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, suffered, incurred by, or asserted against any such party in connection with the rendition of services to the Liquidating Estates, provided that such indemnification shall not apply to the extent any such claims, damages, costs, fines, penalties, liabilities, attorneys' and other professional fees and disbursements, resulted primarily from gross negligence or willful misconduct of the Liquidating Trustee, his agents and advisors, including Post Confirmation Professionals, as the case may be, as determined by a Final Order.   Any such indemnification claims shall be paid prior and in preference to any other payments or distributions to be made from the Liquidating Estates.

### 4.        Powers and Duties of the Liquidating Trustee.

On and after the Effective Date, the Liquidating Trustee shall be the duly authorized representative of the Liquidating Estates for the purpose of implementing the Plan.  Among other things, the Liquidating Trustee shall have (i) the rights, powers and duties conferred to him by the Plan and the Liquidating Estate Agreement, (ii) the rights and powers of a trustee under sections 542 through 552 of the Bankruptcy Code and the duties of a trustee under sections 704(1),(2),(4),(5),(7) and (9) of the Bankruptcy Code, and (iii) the following rights, powers and duties:

a.        liquidate, in accordance with the Plan, the assets of the Liquidating Estates;

b.        serve as Disbursing Agent under the Plan, including to make distributions under the terms of the Plan;

c.        in the Liquidating Trustee's reasonable business judgment, investigate, prosecute, settle and/or abandon rights, actions or litigation of the Liquidating Estates, including the Retained Actions;

d.        manage the affairs of the Liquidating Estates;

e.        collect and marshal all assets of the Liquidating Estates, reduce such assets to Cash, and make interim and final distributions in accordance with the Plan;

f.        monitor and enforce the implementation of the Plan;

g.        file all tax and regulatory forms, returns, reports and other documents required with respect to the Liquidating Estates;

h.    as soon as reasonably practicable, but in no event later than fifteen (15) days after the Effective Date, serve a notice of Effective Date on all holders of Claims and Equity Interests. The notice of Effective Date shall include a notice that the bar date for filing Rejection Damage Claims (or other Claims for damages) arising from the rejection under the Plan of executory contracts or unexpired leases shall be 30 days after the mailing of notice of the Effective Date, as set forth in Section III.A.2;

i.    in the Liquidating Trustee's reasonable business judgment, manage, control, prosecute and/or settle on behalf of the Liquidating Estate, objections to Claims on account of which the Liquidating Trustee (as Disbursing Agent) will be responsible (if Allowed) for making distributions under the Plan;

j.    submit all required U.S. Trustee and Bankruptcy Court reports and pay all required U.S. Trustee Fees until the case is closed;

k.    take all actions necessary and create any documents necessary to wind up the affairs of the Liquidating Estates and implement the Plan; and

l.    take all necessary actions and File all appropriate motions to obtain an order closing the Cases.

**5.    Termination of the Liquidating Estates.**

The Liquidating Estates shall terminate when the Liquidating Trustee has performed all of his duties under the Plan, including the final distribution of all the property of the Liquidating Estates, including all Distributable Cash, which date shall not be more than 24 months after the Effective Date; provided, however, that, upon a motion filed by a party-in-interest, including the Liquidating Trustee, upon a showing of cause, the Bankruptcy Court may extend the duration of the Liquidating Estates so long as shall be necessary to liquidate and distribute property and resolve any and all litigation relating to the Plan or the Cases.

**6.    Additional Provisions Regarding the Liquidating Estates.**

In addition to the provisions contained in the Plan with respect to duties of the Liquidating Trustee, the Liquidating Estate Agreement will provide for, among other things, other actions to be taken by the Liquidating Trustee, the removal of the Liquidating Trustee, or nomination of a successor Liquidating Trustee and the effect of actions by the Liquidating Trustee, subject to Bankruptcy Court approval.  To the extent not set forth in the Plan, the functions of the Liquidating Estates, the powers and duties of the Liquidating Trustee, and the rights of the holders of property in the Liquidating Estates shall be governed by the provisions of the Liquidating Estate Agreement.

**E.    Retained Actions (including Avoidance Actions), Claim Objections and Equity Interest Objections.**

On and after the Effective Date, only the Liquidating Trustee shall have the right and standing to prosecute, abandon, and/or settle any Retained Action, any Claim Objection and any Equity Interest Objection.

All Retained Actions, Claim Objections and Equity Interest Objections shall be subject to all defenses and setoffs that could have been asserted against the Debtors or the Estates with respect thereto.  The costs of investigating, litigating, settling, collecting, recovering or otherwise pursuing any Retained Action, Claim Objection or Equity Interest Objection shall be borne by the Liquidating Estates.

Except as provided in Section II.B.1 (regarding the allowance of Administrative Claims), objections to any Claim or Equity Interest must be Filed and must be served on the entity holding such Claim or Equity Interest by the Claim/Equity Objection Deadline.

**F.      Distribution of Property Under the Plan.**

The following procedures set forth in the Plan apply to distributions made pursuant to the Plan by the Disbursing Agent.  The Disbursing Agent will serve without bond and shall make all distributions under the Plan, except where otherwise provided.   To the extent required by applicable law, the Disbursing Agent in making cash distributions under the Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may require any Holder of an Allowed Claim or Holder of an Allowed Equity Interest entitled to a distribution under the Plan to furnish its, his or her employer or taxpayer identification number (the "TIN") assigned by the Internal Revenue Service.  Any distribution under the Plan may be conditioned on the receipt of such TIN.  If any such Holder of an Allowed Claim or an Allowed Equity Interest entitled to a distribution hereunder fails to provide a requested TIN within forty-five (45) days after the request thereof, then such failure shall be deemed to be a waiver of such Holder's interest in any future distributions, including the right to receive any future distributions.

**1.      Manner of Cash Payments Under the Plan.**

Cash payments to domestic entities holding Allowed Claims and Allowed Equity Interest will be tendered in United States dollars and will be made by checks drawn on a United States domestic bank or by wire transfer from a United States domestic bank.  Payments made to foreign creditors holding Allowed Claims or Allowed Equity Interests may be paid, at the option of the Liquidating Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**2.      No *De Minimis* Distributions.**

Notwithstanding anything to the contrary in this Plan, no cash payment of less than $25 will be made to any entity.  No consideration will be provided in lieu of the *de minimis* distributions that are not made under this Section.

3.      **No Distribution with Respect to Disputed Claims.**

No payments of cash or distributions of other property or other consideration of any kind shall be made on account of any Disputed Claim or Disputed Equity Interest unless and until such Claim or Equity Interest becomes an Allowed Claim or an Allowed Equity Interest or is deemed to be such for purposes of distribution, and then only to the extent that the Claim or Equity Interest becomes, or is deemed to be for distribution purposes, an Allowed Claim or an Allowed Equity Interest.  The presence of a Disputed Claim or Disputed Equity Interest in any Class will not be a cause to delay distribution to Allowed Claims or Allowed Equity Interests in that Class or in other Classes, so long as a reserve is created for the Disputed Claim or Disputed Equity Interest in accordance herewith.  Unless otherwise provided in the Plan, any holder of a Claim or Equity Interest that becomes an Allowed Claim or an Allowed Equity Interest after the Effective Date will receive any distribution that it would have received had its Allowed Claim or Allowed Equity Interest been Allowed as of the Effective Date within fifteen (15) days from the date that such Claim or Equity Interest becomes an Allowed Claim or an Allowed Equity Interest.

4.      **Delivery of Distributions and Undeliverable/Unclaimed Distributions.**

(a)      **Delivery of Distributions in General.**

The Liquidating Trustee shall make distributions to each holder of an Allowed Claim or Allowed Equity Interest by mail as follows: (a) at the address set forth on the proof of Claim filed by such holder of an Allowed Claim; (b) at the address set forth in any written notice of address change delivered to the Liquidating Trustee after the date of any related proof of Claim; (c) at the address reflected in the Schedules if no proof of Claim is filed and the Liquidating Trustee has not received a written notice of a change of address; or (d) at the address of record for Holders of Equity Interests as determined by the Distribution Agent.

(b)      **Undeliverable and Unclaimed Distributions.**

If the distribution to the Holder of any Allowed Claim or Allowed Equity Interest is returned as undeliverable, no further distribution shall be made to such Holder unless and until the Liquidating Trustee is notified in writing of such Holder's then current address.  Subject to the other provisions of the Plan, undeliverable distributions shall remain in the possession of the Liquidating Trustee pursuant to this Section until such time as a distribution becomes deliverable.  All undeliverable cash distributions will be held in unsegregated, interest-bearing bank accounts for the benefit of the entities entitled to the distributions.   These entities will be entitled to any interest actually earned on account of the undeliverable distributions.  The bank account will be maintained in the name of the Liquidating Trustee but it will be accounted for separately.

Any holder of an Allowed Claim or Allowed Equity Interest who does not assert a claim in writing for an undeliverable distribution within 180 days after the Effective Date shall no longer have any claim to or interest in such undeliverable distribution, and shall be forever barred from receiving any distributions under the Plan, or from asserting a Claim against the Debtors, the Estates, Liquidating Estates, or their respective property, and the Claim or Equity Interest giving rise to the undeliverable distribution will be barred.

Any undeliverable distributions that are not claimed under this Section will be transferred to the Liquidating Trustee to be included in Distributable Cash for the benefit of Holders of Allowed Equity Interests under the Plan.

(c)    **Estimation of Disputed Claims or Equity Interests for Distribution Purposes.**

The Liquidating Trustee may move for a Bankruptcy Court order estimating any Disputed Claim or Disputed Equity Interest. The estimated amount of any Disputed Claim or Disputed Equity Interest so determined by the Bankruptcy Court shall constitute the maximum recovery that the holder thereof may recover from the Liquidating Estates, irrespective of the actual amount ultimately Allowed.

**G.    Dissolution of Debtor Entities/Termination of Officers and Directors.**

On the Effective Date, and without further action by any party: (A) the Debtors have no right to operate a business; and (B) the services of the Debtors' officers, directors, managers and authorized representative automatically are terminated and each such officer, director and/or manager shall be deemed to have resigned as of the Effective Date without any further action; provided, however, that notwithstanding the foregoing, the Liquidating Trustee shall have and retain such authority as set forth in the Plan and the Liquidating Estate Agreement to dispose of the assets of the Liquidating Estates and otherwise implement the Plan in accordance with its terms. On the Effective Date, the Debtors shall be deemed liquidated and dissolved as a legal entity pursuant to applicable federal and state law, without further action by any entity. The Liquidating Trustee shall be authorized to execute any documents that implement or are in aid of this Section, in particular, and the Plan in general. The Confirmation Order shall constitute a final decree closing all but one of the Debtors' Chapter 11 Cases.

## V.

## EFFECT OF CONFIRMATION OF THE PLAN

**A.    Binding Effect of Plan/Non-Discharge of the Debtors.**

**Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons and Entities to the fullest extent permitted by Bankruptcy Code section 1141(a). In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Bankruptcy Code section 1141 nevertheless provides, among other things, that the Assets dealt with by the Plan shall be vested in the Liquidating Estates free and clear of all Claims and interests of creditors and equity security holders. Accordingly, no Entity holding a Claim against or Equity Interest in the Debtors may receive any payment from, or seek recourse against, any Assets that are to be distributed under the Plan unless and only to the extent that such Entity is the Holder of an Allowed Claim or Allowed Equity Interest entitled to a distribution in accordance with the terms of the Plan. As of the Effective Date, all Persons are precluded from asserting against any property or Assets that are to be distributed under the Plan any Claims, rights, causes of action, liabilities, or interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

**B.    Releases By The Debtors.**

**Effective (i) automatically on the Retained Actions Deadline with respect to the Debtors' Indemnified Parties, and (ii) as of the Effective Date with regard to all other Debtor Released Parties (as defined below), for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors (in their individual capacities and as debtors and debtors-in-possession)**

will be deemed to forever release, waive, and discharge any and all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities (other than the rights of the Debtors to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder, and liabilities arising after the Effective Date in the ordinary course of business), including Retained Actions (collectively, the "Released Claims"), against the Debtors' Indemnified Parties and any of the representatives, agents, Professionals, advisors, consultants and attorneys of the foregoing (collectively, the "Debtor Released Parties") whether such Released Claims are liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or part on any act omission, transaction, event, or other occurrences taking place before, on or after the Petition Date through and including the Effective Date in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, the negotiation and filing of the Plan, the Disclosure Statement or any prior plans of reorganization, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan or any prior plans of reorganization, the consummation of the Plan, the administration of the Plan, or the property to be liquidated and/or distributed under the Plan, and that could have been asserted by or on behalf of the Debtors or their Estates . Notwithstanding anything herein to the contrary, the release contained herein shall not apply to any Retained Action that is commenced by the Liquidating Trustee on or before the Retained Action Deadline in accordance with the Plan.

C.    **Exculpation and Limitation of Liability.**

The Debtors and their respective officers, directors, members and managers, and the Professionals for the Debtors (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any Person or Entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Chapter 11 Cases, in each case for the period on and after the Petition Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party. With respect to Professionals, the foregoing exculpation and release provision shall also include claims of professional negligence arising from the services provided by such Professionals during the Chapter 11 Cases. Any such claims shall be governed by the standard of care otherwise applicable to the standard of negligence claims outside of bankruptcy. The Confirmation Order shall enjoin the prosecution by any Person or Entity, whether directly, derivatively or otherwise, of any such claim, obligation, suit, judgment, damage, loss, right, remedy, cause of action, charge, cost, debt, indebtedness, or liability which arose or accrued during such period or was or could have been asserted against any of the Exculpated Parties, except as otherwise provided in the Plan or in the Confirmation Order. Each of the Exculpated Parties shall have the right to independently seek enforcement of this release provision. Notwithstanding anything herein to the contrary, the exculpation and limitation of liability provided for herein shall not apply to any acts of omissions that occurred prior to the Petition Date. The rights granted hereunder are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. This exculpation from liability provision is an integral part of the Plan and is essential to its implementation.    Without limiting the generality of the

foregoing, each Exculpated Party shall be entitled to and granted the protections of section 1125(e) of the Bankruptcy Code.

**D.      Injunctive Relief Relating To Releases.**

Except as otherwise expressly provided in this Plan, all Entities that have held, hold or may hold Claims against or Equity Interests in the Debtors are permanently enjoined, from and after the Effective Date, from taking any of the following actions against any of the Debtors, their Estates, the Liquidating Trustee, the Liquidating Estates, the Professionals, or any of their property on account of any Claims or causes of action arising from events prior to the Effective Date, (i) enforcing, attaching, collecting or recovering by any manner or in any place or means any judgment, award, decree or order; (ii) creating, perfecting, or enforcing any Lien or encumbrance of any kind; (iii) asserting any right of setoff, right of subrogation or recoupment against any obligation, debt or liability due to the Debtors, and (iv) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan with respect to such Claim or Equity Interest.  Except as expressly provided herein, the Debtors, the Liquidating Estates and the Liquidating Trustee expressly reserve all rights and defenses that the Debtors may have (including, without limitation, the rights of subrogation and recoupment) with respect to any obligation, debt or liability allegedly due to any Entity.

By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim and Allowed Equity Interest receiving distributions pursuant to this Plan will be deemed to have specifically consented to the injunctions set forth herein.  Nothing in this section shall prohibit the Holder of a timely Filed Proof of Claim or Equity Interest from litigating its right to seek to have such Claim declared an Allowed Claim or Allowed Equity Interest and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Holder of any obligations of the Debtors under this Plan.

**E.      Terms of Existing Injunctions or Stays.**

Unless otherwise provided herein, all injunctions or stays provided for in these Chapter 11 Cases pursuant to sections 105, 362 or 525(a) of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date. The Plan and Confirmation Order will permanently enjoin the commencement or prosecution by any Entity, whether directly, derivatively or otherwise, of any Claims, Equity Interests, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or enjoined pursuant to this Plan and the Bankruptcy Code.

VI.

**<u>OTHER PLAN PROVISIONS</u>**

**A.      The Effective Date.**

The Plan will not become binding or effective until and unless the Effective Date occurs.  The Effective Date will be the first Business Day, as determined by the Debtors, in its reasonable discretion, on which the following conditions have been satisfied, unless waived by the Debtors:

(1)     The Confirmation Order in form and substance satisfactory to the Debtors shall have been entered and become a Final Order and shall provide that the Debtors, the Liquidating Trustee and the Liquidating Estates are authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases and other agreements or documents created in connection with the Plan or effectuate, advance, or further the purposes thereof;

(2)     All Plan Exhibits shall be, in form and substance, reasonably acceptable to the Debtors and shall have been executed and delivered by all parties' signatory thereto;

(3)     The Debtors shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, releases and the agreements or documents created in connection with, and expressly provided for under, the Plan;

(4)     All other actions, documents, and agreements necessary to implement the Plan shall have been effected or executed; and

(5)     In the reasonable judgment of the Liquidating Trustee, the Debtors shall have sufficient Cash available to satisfy in full, or adequately reserve for, all Allowed Claims.

(6)     The Debtors may waive any of the conditions of the Confirmation and/or consummation of this Plan, in whole or in part, set forth in this Article VI at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to obtain Confirmation and/or achieve Consummation of this Plan.

## B.      Stay of Confirmation Order Shortened.

The 14-day stay otherwise applicable to the Confirmation Order under Federal Rule of Bankruptcy Procedure 3020(e) shall be shortened from fourteen (14) days to three (3) days following entry of the Confirmation Order.

## C.      Revocation of Plan/No Admissions.

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed or the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Debtors with respect to any matter set forth in the Plan, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgment, or release of any Claims against, or any Equity Interests in, the Debtors, or of any claims of the Debtors; or (c) prejudice in any manner the rights of any party in any further proceedings.

### D.    Exemption from Certain Transfer Taxes.

In accordance with Bankruptcy Code section 1146(a), neither (i) the issuance, transfer or exchange of a security, nor (ii) the delivery of an instrument or transfer under the Plan or the Sale Order shall be taxed under any law imposing a stamp or similar tax, regardless, in the case of the transfers effectuated under the Sale Order, of the fact that such transfers occurred before entry of the Confirmation Order.  The Confirmation Order shall direct all governmental officials and agents to forego the assessment and collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without payment of such tax or other governmental assessment.

### E.    Modifications of Plan.

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Debtors reserve the right to non-materially alter, amend, or modify the Plan before its substantial consummation.

### F.    Cram-Down.

The Debtors reserves the right to request the Bankruptcy Court confirm the Plan in accordance with Bankruptcy Code section 1129(b) if one or more impaired Classes votes to reject the Plan (provided the other requirements of Bankruptcy Code section 1129 are satisfied).

### G.    Post-Effective Date Effect of Evidences of Claims or Equity Interests.

Commencing on the Effective Date, notes, certificates, warrants, and other evidences of Claims against or Equity Interests in the Debtors constitute only the right to receive the distributions, if any, to the extent set forth under the Plan.

### H.    Post-Effective Date Notices.

Following the Effective Date, all parties-in-interest who wish to receive, or continue to receive; notices of all pleadings Filed in the Cases must File a new request for special notice and serve it on the Liquidating Trustee and his counsel and the U.S. Trustee.  The Liquidating Trustee shall maintain and keep current the post-Effective Date special notice list, and make it available to all parties in interest upon written request.  All pleadings, notices and other papers Filed in the Cases following the Effective Date (other than the notice of Effective Date) must be served on the parties on the post-Effective Date special notice list maintained by the Liquidating Trustee.

### I.    Successors and Assigns.

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity, whether or not such entity is impaired under this Plan and whether or not such Entity has accepted this Plan.

### J.    Saturday, Sunday or Legal Holiday.

If any payment or act under the Plan is required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

**K.     Headings.**

The headings used in the Plan are inserted for convenience only and do not constitute a portion of this Plan or in any manner affect the provisions of this Plan or their meaning.

**L.     Severability of Plan Provisions.**

If before confirmation the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid, enforceable, and, as of the Effective Date, binding under its terms.

**M.     Governing Law.**

Unless a rule of law or procedure is supplied by (a) federal law (including the Bankruptcy Code and Bankruptcy Rules), or (b) an express choice of law provision in any agreement, contract, instrument, or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents, and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware without giving effect to the principles of conflict of laws thereof.

**N.     Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Case after the Effective Date to the fullest extent provided by law, including the jurisdiction to:

1.     Allow, disallow, determine, liquidate, classify, establish the priority or secured or unsecured status of, estimate, or limit any Claim or Equity Interest;

2.     Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

3.     Ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished pursuant to the provisions of the Plan;

4.     Resolve any and all applications, motions, adversary proceedings, and other matters involving the Estates that may be pending on the Effective Date or that may be instituted thereafter in accordance with the terms of the Plan;

5.     Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents entered into in connection with the Plan;

30

6.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's rights or obligations in connection with the Plan;

7.    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Bill of Sale or the Sale Order;

8.    Modify the Plan before or after the Effective Date pursuant to Bankruptcy Code section 1127, or modify the Disclosure Statement or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement; or remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan or Disclosure Statement, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

9.    Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

10.    Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

11.    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement; and

12.    Enter an order closing the Cases.

If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter, this Section shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**O.    Plan Embodies Settlement.**

As described in the Disclosure Statement and in this Plan, this Plan constitutes a good faith compromise and settlement of certain claims and interests between and among the Debtors and other parties-in-interest in accordance with Bankruptcy Code section 1123(b).

**P.    Term of Bankruptcy Injunctions or Stays.**

All injunctions or stays provided for in the Cases under Bankruptcy Code sections 105 or 362, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Q.    Objections to Confirmation.**

Objections to confirmation of this Plan are governed by Bankruptcy Rule 9014.  UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT MAY NOT BE CONSIDERED BY THE COURT.

**R.     Notices.**

Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) had delivery or (c) overnight delivery service, freight prepaid, and addressed as follows:

For the Debtors:

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Paul J. Battista (Fla. Bar No. 884126)
Heather L. Harmon (Fla. Bar No. 013192)
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Telephone:      (305) 349-2300
Facsimile:      (305) 349-2310
Email:          pbattista@gjb-law.com
                hharmon@gjb-law.com

      and

**CHIPMAN BROWN CICERO & COLE, LLP**
William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
1007 North Orange Street, Suite 1110
Wilmington, Delaware  19801
Telephone:      (302) 295-0191
Facsimile:      (302) 295-0199
Email:          chipman@chipmanbrown.com
                olivere@chipmanbrown.com

## VII.

## RECOMMENDATION AND CONCLUSION

The Debtors respectfully submit that the foregoing Plan is in the best interests of all creditors and parties in interest.

Dated: November 17, 2014                    **DYNAVOX, INC.**


                                */s/ Erin L. Russell*
                                            By:  Erin L. Russell
                                            Its:  Authorized Representative

**DYNAVOX INTERMEDIATE LLC**

_____*/s/ Erin L. Russell*_____
By:  Erin L. Russell
Its:  Authorized Representative


**DYNAVOX SYSTEMS HOLDINGS LLC**

_____*/s/ Erin L. Russell*_____
By:  Erin L. Russell
Its:  Authorized Representative