# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| DYNAVOX, INC., et al.,[1] | Case No. 14-10791 (LSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: February 18, 2015 at 10:00 a.m.<br>Objection Deadline: January 26, 2015 at 4:00 p.m. |

**JOINT APPLICATION OF BROWN RUDNICK LLP AND THE ROSNER LAW GROUP LLC, AS CO-COUNSEL FOR THE AD HOC COMMITTEE OF EQUITY SECURITY HOLDERS, PURSUANT TO 11 U.S.C. § 503(B) FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIMS FOR COUNSEL'S SERVICES INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CASES AND REQUEST FOR A WAIVER OF CERTAIN REQUIREMENTS OF <u>LOCAL BANKRUPTCY RULE 2016-2(D)</u>**

| | |
|---|---|
| Name of applicant: | Brown Rudnick LLP ("**Brown Rudnick**") and The Rosner Law Group LLC ("**Rosner Law Group**") |
| Authorized to provide professional services to: | Substantial Contribution Application |
| Period for which compensation and reimbursement is sought: | April 8, 2014 through December 22, 2014 |
| Amount of compensation sought as actual, reasonable, and necessary: | $98,666.91 |
| Amount of reimbursement sought as actual, reasonable, and necessary: | $1,333.09 |

**PRIOR FEE APPLICATIONS FILED:  NONE**

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) DynaVox Intermediate LLC (****); (ii) DynaVox Inc. (7281); and (iii) DynaVox Systems Holdings LLC (8157). The mailing address for the Debtors is 2100 Wharton Street, Suite 400, Pittsburgh, Pennsylvania 15203.

{00015302. }

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>DYNAVOX, INC., et al.,[1]<br><br>　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 14-10791 (LSS)<br><br>(Jointly Administered)<br><br>Hearing Date: February 18, 2015 at 10:00 a.m.<br>Objection Deadline: January 26, 2015 at 4:00 p.m. |

**JOINT APPLICATION OF BROWN RUDNICK LLP AND THE ROSNER LAW GROUP
LLC, AS CO-COUNSEL FOR THE AD HOC COMMITTEE OF EQUITY SECURITY
HOLDERS, PURSUANT TO 11 U.S.C. § 503(B) FOR ALLOWANCE OF
ADMINISTRATIVE EXPENSE CLAIMS FOR COUNSEL'S SERVICES
INCURRED IN MAKING A SUBSTANTIAL CONTRIBUTION IN THESE CASES
AND REQUEST FOR A WAIVER OF CERTAIN REQUIREMENTS OF
LOCAL BANKRUPTCY RULE 2016-2(D)**

Brown Rudnick LLP ("Brown Rudnick") and The Rosner Law Group LLC ("Rosner Law Group," and together with Brown Rudnick, "Committee Counsel"), co-counsel to the Ad Hoc Committee of Equity Security Holders (the "Ad Hoc Committee"), hereby file this application (this "Application") pursuant to Section 503(b) of Title 11 of the United States Code (the "Bankruptcy Code") seeking payment of professional fees and expenses incurred by Committee Counsel based on the substantial contributions made for the benefit of the debtors' estates in the above-captioned chapter 11 cases (collectively, the "Cases"), and in support thereof, respectfully state as follows:

**PRELIMINARY STATEMENT**

1.　　Committee Counsel became involved in these Cases as a result of equity holders' concerns that, absent vigorous representation of the rights of existing equity holders, there

---

[1]　　The Debtors in these cases, along with the last four digits of their federal tax identification numbers, are (i) DynaVox Intermediate LLC (****); (ii) DynaVox Inc. (7281); and (iii) DynaVox Systems Holdings LLC (8157). The mailing address for the Debtors is 2100 Wharton Street, Suite 400, Pittsburgh, Pennsylvania 15203.

{00015302. }

existed a significant risk that value of the Debtors' estates would not be maximized and that the Debtors' insiders would manage these Cases exclusively for their benefit. To that end, Committee Counsel, following stiff opposition by the Debtors and the decision of the Office of the United States Trustee (the "U.S. Trustee") not to appoint an official equity committee (following a request by the Ad Hoc Committee), remained an active participant in the Cases. During these Cases, the Ad Hoc Committee was the sole non-insider representative of equity security holders.

2. These Cases have culminated with a chapter 11 plan (the "Plan")[2] that delivers value to shareholders and pays in full all creditors' allowed claims.

3. Among other things, Committee Counsel performed the following activities on behalf of the Debtors' equity security holders:

- Formal Request for the Formation of the Committee. Committee Counsel drafted and submitted two substantive letters (one to respond to the replies from the Debtors and creditors) to the U.S. Trustee seeking the formation of the Committee. These letters included robust legal analyses supporting the need for an official committee to adequately represent all equity holders – both institutional and individual. Committee Counsel extensively analyzed the Debtors' pleadings and other publicly available information to establish a substantial likelihood that there was value owing to equity holders. Committee Counsel also corresponded frequently with the U.S. Trustee and numerous equity holders in furtherance of these efforts. Despite these efforts, the U.S. Trustee declined to form an official committee of equity security holders. However, the Ad Hoc Committee's efforts to obtain appointment of an official equity committee led the Debtors and other parties-in-interest to engage the Ad Hoc Committee in all critical aspects of these Cases.

- Participation in the Sale Process. The Ad Hoc Committee and Committee Counsel introduced Systems Acquisition Corporation ("SAC") to the Debtors and facilitated SAC's due diligence of the Systems Interests. SAC's participation at the auction for the Systems Interests (the "Auction") led Tobii Technology AB ("Tobii") to increase its offer for the Systems Interests from its initial bid of $14.3 million to $18 million following several rounds of

---

[2] Terms not defined herein shall have the meaning ascribed to such terms in the *First Amended Joint Plan of Liquidation of DynaVox Inc., DynaVox Intermediate LLC and DynaVox Systems Holdings LLC Under Chapter 11 of the Bankruptcy Code*, dated November 17, 2014 [Docket No. 260].

{00015302. }   2

bidding by SAC and Tobii at the robust Auction.  The increase in the purchase price for the Systems Interests is the sole reason unsecured creditors are unimpaired under the plan and distribution is possible to equity security holders upon consummation of the Plan.  To ensure the fairness of the Auction, counsel for the Ad Hoc Committee attended the Auction as the sole non-insider representative of Debtors' estates.  At the hearing to approve the sale of the Systems Interests to the Court, counsel for the Ad Hoc Committee represented to the Court that all parties in attendance at the Auction conducted themselves in good faith and in accordance with the Court-approved bidding procedures.  The Ad Hoc Committee and Committee Counsel also cooperated with the Debtors to ensure the bidding procedures maximized opportunities for interested parties to bid on the Debtors' assets and select an investment banker to market the Systems Assets for sale.  Accordingly, the Ad Hoc Committee and Committee Counsel meaningfully contributed to the success of these Cases' sales process.

- Participation in the DIP Financing Process.  At the first day hearing in these Cases, the Ad Hoc Committee and Committee Counsel prevailed upon the Debtors to scuttle their proposed debtor-in-possession financing proposal with Tobii in favor of a less onerous financing package with JEC-BR Partners, LLC ("JEC").  The Ad Hoc Committee and its counsel participated in the negotiation of the provisions of the term sheet and interim and final orders for approval of the financing provided by JEC.  Principally, the Ad Hoc Committee and Committee Counsel worked to ensure that JEC-BR's collateral package for the DIP Financing excluded certain Retained Actions (as defined by Plan), including claims and causes of action against the Debtors' insiders.  No other creditors or equity security holders provided JEC or the Debtors participation in the negotiation of the proposed financing documentation.

- Plan and Confirmation Order.  The Ad Hoc Committee and Committee Counsel raised a number of concerns regarding the Plan with the Debtors.  These issues, all of which were consensually resolved, principally focused on ensuring that the Plan conferred the appropriate standing to the Liquidating Trust to efficiently investigate and assert the Retained Actions and limited the releases granted by the Debtors upon substantial consummation of the Plan.  Under the Plan, any recovery on the Retained Actions should inure exclusively to the benefit of equity security holders.  In addition, the Debtors' release of certain insiders will not be effective until following an exhaustive investigation by the Liquidating Trustee appointed under the Plan.

4. These aforementioned activities conferred benefits to the Debtors' estates and the administration of these Cases and constitute a substantial contribution by Committee Counsel, such that Committee Counsel is entitled to payment of its professional fees and expenses.

{00015302. }                                                3

5. The Debtors recognized the substantial contribution provided by Committee Counsel and reserved $100,000 under the *Order Confirming First Amended Joint Plan of Liquidation of DynaVox, Inc., DynaVox Systems Holdings LLC and DynaVox Intermediate LLC Under Chapter 11 of the Bankruptcy Code* entered by the Bankruptcy Court on December 22, 2014 [Docket No. 309] for payment of the substantial contribution claims of Committee Counsel upon their allowance by the Bankruptcy Court.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code Sections 503(b)(3)(D) and (b)(4).

## BACKGROUND

**I.     The Chapter 11 Cases**

7. On April 7, 2014 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structures and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Erin L. Russell in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 4], filed on the Petition Date.

**II.    Ad Hoc Committee Counsel's Efforts to Effect Formation of an Equity Committee**

8. Shortly after the Petition Date, Committee Counsel was contacted by several equity holders expressing their belief that there may be substantial equity value in the Debtors estates based upon an acquisition proposal from Tobii received by the Debtors prior to the Petition Date. In response, Committee Counsel made some inquiries and extensively analyzed

the Debtors' pleadings, financial statements and other publicly available information to determine whether there was a substantial likelihood that equity holders would be entitled to a distribution under any chapter 11 plan confirmed by the Debtors in these Cases.  After concluding that there likely was significant equity value owing to equity holders, Committee Counsel analyzed applicable case law regarding the appointment of official equity committees.

9.   As such, on April 16, 2014, Committee Counsel submitted a letter to the U.S. Trustee on behalf of six equity holders requesting the appointment of an official equity committee.  In this initial letter, Committee Counsel contended that the appointment of an equity committee in these Cases was appropriate and necessary to ensure adequate representation of all equity holders (both institutional and individual) – a constituency that was in the money.  In addition to including a thorough legal analysis concerning the need for (and lack of) adequate representation for all equity holders, Committee Counsel provided the following support for its belief that equity holders were entitled to a meaningful distribution: (i) the Debtors were in receipt of an acquisition proposal from Tobii that, if consummated, would satisfy all claims asserted against the Debtors and provide for a meaningful distribution to equity security holders; (ii) through a competitive auction process, other interest parties may outbid Tobii, further increasing the extent to which equity might "be in the money"; (iii) the Debtors held potential claims and causes of action against third parties that were not subject to the liens of their prepetition or post-petition lenders; and (iv) the prepetition secured claim of JEC-BR remained subject to allowance by the Bankruptcy Court.

10.   After receiving a copy of Committee Counsel's initial letter, Debtors' counsel submitted a letter to the U.S. Trustee on April 23, 2014, which vigorously opposed the appointment of an official committee.  Committee Counsel submitted a reply letter to the U.S.

Trustee, again highlighting the substantial likelihood of significant equity value and the need for adequate representation of equity holders.

11.     The U.S. Trustee declined by the Ad Hoc Committee's request for appointment of an official equity committee on April 30, 2014. Despite this decision by the U.S. Trustee, the foregoing analyses, the upcoming auction for the Systems Interests, and the continued interest by multiple parties in the Systems Interests led Committee Counsel to conclude that the continued participation by the Ad Hoc Committee was necessary in these Cases given equity's continuing lack of representation and the strong probability that the Debtors' estates were solvent and a distribution to equity security holders would follow.

### III.     Equity Holders' Improved Recovery Under The Confirmed Plan

12.     The Ad Hoc Committee was an active participant in the Debtors' Cases. These efforts, in turn, led to confirmation of the Plan which provides equity security holders with a recovery and a potential receive a greater recovery upon the Liquidating Trustee's prosecution of retained causes of action. With the seat at the table created by Committee Counsel, the Committee was positioned to, and did, vigorously advocate for the interests of non-insider shareholders.

13.     As noted above, the Ad Hoc Committee and Committee Counsel took an active role in the Debtors' sale process for the Systems Interests. SAC, the party introduced by the Ad Hoc Committee and Committee Counsel to the Debtors, conducted due diligence and participated at the Auction. Tobii's initial bid of $14.3 million for the Systems' Interests would have yielded only sufficient sale proceeds to satisfy the Debtors' secured debt owed to JEC-BR; no distribution to unsecured claims or equity security holders would have been possible had the Systems Interests sold for $14.3 million. Accordingly, SAC's participation at the Auction, which

led Tobii to increase its bid to $18 million, was critical to providing equity security holders with a distribution under the Plan.

14. Additionally, through its involvement in negotiating the Debtors' DIP Financing and evaluating the Debtors' proposed Plan and confirmation order related thereto, the Ad Hoc Committee and Committee Counsel worked to preserve the value of the Retained Actions for the benefit of equity security holders.

## BASIS FOR RELIEF

A. Bankruptcy Code Section 503(b) Authorizes the Requested Payments

15. Section 503(b) of the Bankruptcy Code authorizes the bankruptcy court to award compensation for legal fees and other expenses incurred in making a "substantial contribution" in a chapter 11 case. In pertinent part, Section 503(b) provides:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
>
> . . .
>
>> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by–
>>
>> . . .
>>
>>> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title;
>>
>> . . .
>>
>> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant[.]

11 U.S.C. § 503(b)(3)(D)-(b)(4).

16. By awarding administrative expense status to fees and expenses incurred for the benefit the estate and its creditors, Section 503(d) promotes "meaningful creditor participation in the reorganization process." Lebron v. Mechem Fin. Inc., 27 F.3d 937, 944 (3d Cir. 1994) ("Subsection 503(b)(3)(D) represents an accommodation between the twin objectives of encouraging 'meaningful creditor participation in the reorganization process,' and 'keeping fees and administrative expenses at a minimum so as to preserve as much of the estate as possible for the creditors.'") (citations omitted); Summit Metals, 379 B.R. at 50.

17. Whether an entity has made a substantial contribution to a case is a question of fact left to the bankruptcy court's discretion. See Lebron, 27 F.3d at 946. The burden of proof is on the applicant to demonstrate by a preponderance of the evidence that it has made a substantial contribution in the case. See Summit Metals, 379 B.R. at 50 (Bankr. D. Del. 2007) (citing In re Buckhead Am. Corp., 161 B.R. 11, 15 (Bankr. D. Del. 1993)); In re Dana Corp., 390 B.R. 100, 108 (Bankr. S.D.N.Y. 2008). Courts have found that an applicant satisfies the test for providing a substantial contribution when the applicant's activities "'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors.'" In re Tropicana Entm't LLC, 498 Fed. Appx. 150, 152 (3d Cir. 2012) (quoting Lebron, 27 F.3d at 944).

18. In determining whether an applicant has made a substantial contribution, courts have examined several factors, including: "whether the services were provided to benefit the estate itself or all of the parties in the bankruptcy case; whether the services conferred a direct benefit upon the estate; and whether the services were duplicative of services performed by others." Summit Metals, 379 B.R. at 51 (internal quotations omitted). As the Third Circuit has noted, "the existence of self-interest cannot in and of itself preclude reimbursement." Lebron, 27 F.3d at 944. Further expounding on this topic, the Third Circuit stated that:

> [T]he purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests <u>and</u> which, accordingly, would have been undertaken absent an expectation of reimbursement from the estate.

<u>Id.</u> (emphasis added). Stated differently, activities that are designed to benefit the debtor's estate, that do in fact provide such a benefit and that are undertaken with an expectation of reimbursement are entitled to reimbursement. <u>See</u> <u>id.</u>

    B.    <u>Committee Counsel Made a Substantial Contribution to These Cases</u>

19.    Soon after the Petition Date and later, despite the U.S. Trustee's decision not to appoint an official equity committee, Committee Counsel actively participated in the Cases with a view towards preserving the interests of the Debtors' equity holders.

20.    As indicated above, the Ad Hoc Committee' initial efforts, including participating at the first day hearing of these Cases and prosecuting the appointment of an official committee of equity security holders, led the Debtors to engage and consult with the Ad Hoc Committee on matters that potentially impacted distributions to their equity holders. The Ad Hoc Committee and Committee Counsel, therefore, safeguarded the interests of all equity holders.

21.    In addition, the Ad Hoc Committee and Committee Counsel were instrumental to the success of the Auction and preserving the Retained Actions for the benefit of equity security holders under the Plan.

22.    Committee Counsel's efforts were not duplicative of those undertaken by other professionals, as they were performed for precisely the reason that there no independent fiduciary representative acting on behalf of equity's interests. The U.S. Trustee did not appoint an official committee of unsecured creditors in the Cases. Additionally, the U.S. Trustee

declined the Ad Hoc Committee's request to form an official committee of equity security holders in these Cases.

23.     Committee Counsel acted on behalf of all equity holders with the expectation that, upon the successful conclusion of the Cases, Committee Counsel would seek to be reimbursed the professional fees and expenses incurred for taking actions on behalf of all equity holders.

C.      Fees and Expenses for Which Reimbursement is Requested

24.     The total professional fees and expenses incurred by Committee Counsel in connection with these Cases is $125,089.48.  A breakdown of these fees and expenses by firm is set forth in the following table:

| Name of Professional | Fees | Expenses | Total |
| --- | --- | --- | --- |
| Brown Rudnick | $117,726.39 | $1,270.64 | $118,997.03 |
| Rosner Law Group | $6,030.00 | $62.45 | $6,092.45 |
| **Aggregate Totals:** | $123,756.39 | $1,333.09 | **$125,089.48** |

25.     Pursuant to an agreement with the Debtors, Committee Counsel has agreed to limit its request to payment of a substantial contribution claim of $100,000.00.  Accordingly, Brown Rudnick has agreed to reduce its substantial contribution request for reimbursement for fees and expenses to $93,907.55.

26.     Brown Rudnick and The Rosner Law Group, LLC charge $0.10 per page for photocopying expenses, and they record the number of copies made when a person makes copies for clients.  With respect to providers of on-line legal research services (e.g., WESTLAW), the charges show the standard usage rates these providers charge for computerized legal research.

The actual amount charged by such services, with no premium, has been billed to Ad Hoc Committee. Any volume discount received is passed on to Ad Hoc Committee.

27. Attached as **Exhibit A** to this Application are the detailed time entries of Brown Rudnick reflecting the specific services provided by the firm in this case.

28. Attached as **Exhibit B** to this Application are the detailed time entries of the Rosner Law Group reflecting the specific services provided by the firm in this case

29. Brown Rudnick and the Rosner Law Group are prepared to answer any questions the Court may have in respect of the services described in the Exhibits and the underlying bases for this Application.

## REQUEST FOR WAIVER OF LOCAL RULE 2016-2(D)

30. To the best of their knowledge, Brown Rudnick and the Rosner Law Group believe that this Application and the description of services set forth herein of work performed are in substantial compliance with the requirements relating to compensation requests set forth in Local Bankruptcy Rule 2016-2(d). To the extent that this Application does not comply in all respects with the requirements of Local Bankruptcy Rule 2016-2(d), Brown Rudnick and the Rosner Law Group believe that such deviations are not material and respectfully request that such requirements be waived.

## RESERVATION OF RIGHTS

31. Brown Rudnick and the Rosner Law Group reserve the right to amend and/or supplement this Application.

**NOTICE**

32.  Notice of this Application has been given to: (i) the Office of the United States Trustee for the District of Delaware; (ii) Debtors' counsel; and (ii) all other parties that have requested notice in these cases.

**WHEREFORE**, Brown Rudnick and the Rosner Law Group respectfully request that this Court (i) approve the Application, (ii) enter an order, substantially in the form attached hereto, authorizing and directing the Disbursing Agent to pay Brown Rudnick $93,907.55 for professional fees and expenses based upon Brown Rudnick's substantial contribution to these cases and to pay the Rosner Law Group $6,092.45 in payment of professional fees based upon the Rosner Law Group's substantial contribution to these cases, and (iii) grant such other and further relief as is just and proper.

Dated:  January 12, 2015

**BROWN RUDNICK LLP**

*/s/ Bennett S. Silverberg*
Bennett S. Silverberg, Esquire
Seven Times Square
New York, NY 10036
(212) 209-4800
(212) 209-4801 (fax)
bsilverberg@brownrudnick.com

-and-

**THE ROSNER LAW GROUP LLC**
*/s/ Scott Leonhardt*
Scott Leonhardt (DE #4885)
824 Market Street, Suite 810
Wilmington, DE 19801
(302) 777-1111
leonhardt@teamrosner.com

*Co-counsel to the Ad Hoc Committee of Equity Security Holders*